Filed:  August 24, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 97-2206(L)
(CA-89-2231-B)

---

Larry C. Hicks, etc., et al,

Plaintiffs - Appellees,

versus

Joseph I. Cassilly, etc., et al,

Defendants - Appellants.

---

O R D E R

---

The court amends its opinion filed July 27, 1998, as follows:

On page 11, first paragraph, line 3 -- the following footnote is added:

> **4** The district court also denied summary judgment to Mary Teresa Garland, an Assistant State's Attorney in Cassilly's office. Garland did not participate in obtaining the search warrants, and there is no evidence suggesting that she had any role in Cassilly's decision to file a civil complaint after the warrants were executed. Accordingly, the district court is also instructed to enter summary judgment for Garland on qualified immunity grounds.

For the Court

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LARRY C. HICKS, Director-Trustee
for 3011 Corporation; L. R. NEWS,
INCORPORATED, t/a Edgewood Books,
Plaintiffs-Appellees,

and

3011 CORPORATION, t/a US Books;
JOSEPH J. LAVODIE; PATRICIA A.
FULTON; PAUL EDWARD KOENIG;
PATRICIA ANN MCGINNIS;
WILLIAM L. PALMER, JR.; WILLIAM
ENSOR; EDWARD E. CAGE,
Plaintiffs,

v.

JOSEPH I. CASSILLY, Individually and

as States Attorney, Harford County,
Maryland; M. TERESA GARLAND,
Individually and as Assistant States
Attorney, Harford County,
Maryland,
Defendants-Appellants,

and

ROBERT COMES, in his official
capacity as Sheriff for Harford
County; DOMINIC J. MELE,
Individually; JESSE BANE; J. R.
TAYLOR; THOMAS GOLDING; ROY
MITCHELL; MICHAEL BARLOW; FRED
SHERRON; JAMES STONESIFER;

No. 97-2206

JAMES M. HARKINS; EDWARD
HOPKINS; EDWARD KECK; JAMES
WAY, Individually and as Deputy
Sheriffs, Harford County, Maryland;
JOHN KUTZ; AL HAMLETT, in their
official capacities only as members
of the Federal Bureau of
Investigation, Bel Air Field Office;
BOB JONES, in his official capacity
only as U.S. Postal Inspector; JOHN
PHILIP, INCORPORATED; RAYMOND
ASTOR,
Defendants.

LARRY C. HICKS, Director-Trustee
for 3011 Corporation; L. R. NEWS,
INCORPORATED, t/a Edgewood Books,
Plaintiffs-Appellees,

and

3011 CORPORATION, t/a US Books;
JOSEPH J. LAVODIE; PATRICIA A.
FULTON; PAUL EDWARD KOENIG;
PATRICIA ANN MCGINNIS;

WILLIAM L. PALMER, JR.; WILLIAM
ENSOR; EDWARD E. CAGE,
Plaintiffs,

v.

J. R. TAYLOR, Individually and as
Deputy Sheriff, Harford County,
Maryland,
Defendant-Appellant,

and

No. 97-2219

2

JOSEPH I. CASSILLY, Individually and
as States Attorney, Harford County,
Maryland; M. TERESA GARLAND,
Individually and as Assistant States
Attorney, Harford County,
Maryland; ROBERT COMES, in his
official capacity as Sheriff for
Harford County; DOMINIC J. MELE,
Individually; JESSE BANE; THOMAS
GOLDING; ROY MITCHELL; MICHAEL
BARLOW; FRED SHERRON; JAMES
STONESIFER; JAMES M. HARKINS;
EDWARD HOPKINS; EDWARD KECK;
JAMES WAY, Individually and as
Deputy Sheriffs, Harford County,
Maryland; JOHN KUTZ; AL HAMLETT,
in their official capacities only as
members of the Federal Bureau of
Investigation, Bel Air Field Office;
BOB JONES, in his official capacity
only as U.S. Postal Inspector; JOHN
PHILIP, INCORPORATED; RAYMOND
ASTOR,
Defendants.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CA-89-2231-B)

Argued: May 7, 1998

Decided: July 27, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

3

Reversed and remanded with instructions by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Andrew Howard Baida, Assistant Attorney General, Baltimore, Maryland; Jefferson Lee Blomquist, Deputy County Attorney, DEPARTMENT OF LAW, Bel Air, Maryland, for Appellants. William Edward Seekford, Towson, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellants Cassilly and Garland.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiffs, two adult bookstores and their owners and employees (collectively, Hicks[1]), sued under 42 U.S.C. § 1983 because of allegedly unconstitutional searches of the premises of the bookstores. The searches resulted in the seizure of a large quantity of allegedly obscene materials. The searches were conducted pursuant to warrants obtained by Deputy Sheriff J. R. Taylor. The applications for the warrants were reviewed by Harford County (Maryland) State's Attorney, Joseph Cassilly. Hicks alleges that Taylor and Cassilly violated the United States Constitution by obtaining the warrants without first requesting a pre-seizure adversarial hearing. Taylor and Cassilly argue that they are entitled to qualified immunity because it was not clearly established of the time of the searches that a seizure of alleg-

_____

[1] We refer to all of the plaintiffs as "Hicks" to simplify our writing. Hicks is actually plaintiff Larry C. Hicks, the Director-Trustee for 3011 Corp. (t/a US Books), whose charter has been revoked.

4

edly obscene materials as evidence in a criminal case required a pre-seizure adversarial hearing. The district court denied qualified immunity to Taylor and Cassilly on the ground that the warrants violated the constitutional requirement for a pre-seizure hearing. We find that Taylor and Cassilly did not violate clearly established law in applying for warrants to seize allegedly obscene material without a pre-seizure hearing. We therefore reverse the order of the district court and remand with instructions that Taylor and Cassilly be granted summary judgment on the grounds of qualified immunity.

I.

Early in 1989 the State's Attorney's Office of Harford County, Maryland, began an investigation of two adult bookstores located within the county, US Books and Edgewood Books. The State's Attorney, Joseph Cassilly, believed that these bookstores were displaying sexually explicit materials in violation of Md. Ann. Code art. 27, § 416D. That statute bans the display for advertising purposes of "any . . . visual representation or image of a person or portion of a human body that depicts sadomasochistic abuse, sexual conduct or sexual excitement, or any verbal description or narrative account of these activities or items." The Maryland Court of Appeals has interpreted this provision to incorporate the principles of the United States Supreme Court's obscenity jurisprudence. See Smiley v. State, 450 A.2d 909 (Md. 1982). Violation of § 416D is a criminal offense, punishable as a misdemeanor.

As part of this investigation, Deputy Sheriff Taylor visited both bookstores, noted how the materials were displayed, and purchased two magazines at each store. On the basis of this investigation, Taylor drafted affidavits to support applications for search warrants for the bookstores. Taylor submitted these to Cassilly, and upon receiving Cassilly's approval, filed the applications and supporting affidavits with a state judge on June 9, 1989.

Taylor's affidavit regarding the search warrant for US Books opened by reciting the statutory requirements of § 416D, the criminal provision. It then described with specificity the building where the book store was located. Finally, the affidavit went into extensive and explicit detail about the depictions on the front and back covers of the

5

two magazines Taylor had bought (entitled "She-Male Superstar" and "She-Male In Control"). Photostatic copies of the covers of these magazines were attached to the affidavit. Similar references and representations were made in the affidavit supporting the application for a warrant for Edgewood Books. Based on these affidavits, Judge Cypert Whitfill issued warrants authorizing the authorities to "seize and remove all books, magazines, photographs, films, poster[s], and other items or materials that are displayed for advertising purposes which depict sadomasochistic abuse, sexual conduct, and sexual excitement." The judge indicated in the warrants that he was "satisfied that there is probable cause to believe" that such items were illegally displayed. There was no prior adversary hearing before the warrants were issued.

On June 13, 1989, these search warrants were served on the two bookstores. Some 1,130 magazines and other materials were seized from US Books, and 765 items were seized from Edgewood Books. On July 18 Cassilly filed a civil complaint in state court against the bookstores and sought a hearing to determine whether the bookstores possessed obscene materials. The complaint asked that the materials, if found to be obscene, be enjoined from dissemination, confiscated, and destroyed pursuant to Md. Ann. Code art. 27,§ 418A. This complaint was dropped before a determination of obscenity was made. In 1990 Cassilly filed criminal charges under § 416D against the bookstores and their employees. Those criminal charges resulted in either acquittals or reversals on appeal.

Hicks filed this § 1983 action against several law enforcement officers or officials involved in the June 13, 1989, seizure, including Cassilly and Taylor. This suit included allegations that Cassilly and Taylor violated the Constitution by applying for search warrants to seize material from the bookstores without a pre-seizure hearing. The defendants moved for summary judgment based on qualified immunity. The district court granted qualified immunity to several of the defendants but denied it as to Cassilly and Taylor on the ground that the applications for the search warrants violated clearly established law that a mass seizure of allegedly obscene materials must be preceded by an adversary hearing. Cassilly and Taylor appeal.

II.

In order to overcome a claim of qualified immunity, a plaintiff must show that it was clearly established at the time of the alleged violation that the defendant's actions were unconstitutional. See Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc). We therefore focus our inquiry on the state of the applicable law in June of 1989.

A.

"[T]he general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized under probable cause." Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 63 (1989). The rule is different for the seizure of allegedly obscene material, however. While obscene material enjoys no First Amendment protection, until an obscenity determination is made, targeted material is presumed to be protected by the First Amendment. Applying the general rule to the seizure of allegedly obscene material would therefore be an unconstitutional prior restraint on (presumptively) protected expressive material. Accordingly, the Supreme Court has established "rigorous procedural safeguards[that] must be employed before expressive materials can be seized as `obscene.'" See id. at 62 (citing Marcus v. Search Warrant, 367 U.S. 717 (1961)). In order to satisfy these safeguards, a warrant for the mass seizure of allegedly obscene material with the purpose of taking that material out of circulation or preventing its display may not issue without a prior adversarial hearing. See Quantity of Books v. Kansas, 378 U.S. 205, 210 (1964).**2**

On the other hand, the Supreme Court has recognized that this right to a pre-seizure adversarial hearing is not absolute. In Heller v. New York, 413 U.S. 483 (1973), police officers obtained a warrant for the seizure of an allegedly obscene movie based on a criminal anti-obscenity statute. This seizure was intended to preserve the film as evidence in the criminal trial that followed. The Court refused to

_____

**2** Hicks does not dispute that if this special rule were not in the picture, the warrants were supported by and could have been issued on probable cause.

7

invalidate the seizure despite the defendant's claims that he was entitled to a pre-seizure adversarial hearing. The Court found that seizing an allegedly obscene work "for the bona fide purpose of preserving it as evidence in a criminal trial" does not contain the same danger of prior restraint as a seizure with intent to destroy that material. Id. at 492. Accordingly, the Court concluded that the seizure of allegedly obscene material to preserve it as evidence in a criminal proceeding does not require a pre-seizure adversary hearing. See id. at 490; see also New York v. P.J. Video, Inc., 475 U.S. 868, 873 (1986); Fort Wayne Books, 489 U.S. at 63 ("[A] single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause").

Therefore, the law was clearly established in June 1989 to this extent: a seizure of allegedly obscene materials for the purpose of destroying or halting their distribution required a pre-seizure adversarial hearing, while the same seizure for the purpose of preserving evidence for a subsequent criminal trial did not require such a hearing. We therefore examine Hicks's allegations against both Cassilly and Taylor against this established principle.

B.

In this case the record reveals that State's Attorney Cassilly launched his investigation to find evidence of violations of § 416D, a criminal statute. In an affidavit supporting his motion for summary judgment, Cassilly indicated that "the sole objective of the State's Attorney's office [in authorizing the search] was to obtain evidence of criminal violations of Art. 27, § 416D." Cassilly also testified in his deposition that the whole purpose of the seizure under the search warrants was to obtain evidence for use at a criminal trial. See, e.g., J.A. 479 (noting that the search warrant was focused to look for "violations of § 416(d) [sic]"). Cassilly indicated that he "didn't have a problem" with Hicks selling the pornographic material, but Cassilly simply intended to stop its display in a manner that violated the criminal statute. This testimony is uncontradicted in the record.

Hicks points to only one matter which he claims supports an inference that Cassilly applied for the warrants with the intent to destroy the materials. Hicks highlights the fact that one month after the June

8

13 search of the bookstores, Cassilly filed a civil complaint for injunctive relief under Md. Ann. Code art. 27, § 418A, which, if granted, would have led to the destruction of any materials found to be obscene. Hicks argues that complaint should be read to infer an intent by Cassilly to use the search warrant as a tool to seize allegedly obscene material from the bookstores in order to destroy it later. We disagree.

The complaint does not make clear whether its target includes the material seized under the search warrants on June 13, 1989, as Hicks suggests it does, or whether it is directed solely at other material which Hicks allegedly continued to display after the seizure. Since we are bound to construe the facts in favor of Hicks (the non-movant), we will assume that the material seized on June 13 is targeted by the complaint, even though Cassilly vigorously disputes this charge. The complaint also, however, asks the state court to "Order [Hicks] to Show Cause why the requested injunction should not be granted and the matters seized and destroyed." This indicates Cassilly's intent to submit to a pre-seizure adversarial hearing on all material to be seized and destroyed under the complaint.[3] Even assuming that the complaint covered those items already seized on June 13, those items could not have been destroyed pursuant to the complaint before a hearing was conducted. We cannot reasonably infer from these facts that Cassilly used the search warrants as a ruse to evade a pre-seizure adversarial hearing, only to ask for just such a hearing in his civil complaint filed a month later. Rather, the complaint can only be read to indicate that Cassilly intended to obey the constitutional rule requiring an adversarial hearing before the allegedly obscene material could be seized and destroyed under the civil case. Finally, Cassilly did not switch exclusively to a civil proceeding (where a pre-seizure hearing was required) after some materials were seized under the criminal warrants. He eventually followed up on the warrants with criminal prosecutions.

Hicks has failed to produce any material evidence that the search warrants were intended for any purpose other than to preserve evidence for a criminal trial. Hicks's attempt to establish a connection

_____

[3] The hearing was never held, and Cassilly later voluntarily dismissed the complaint.

between the search warrants and the civil complaint is simply "too remote and too tenuous to create a genuine issue of material fact." Ennis v. Nat'l Assoc. of Bus. and Educ. Radio, Inc. , 53 F.3d 55, 62 (4th Cir. 1995). Cassilly therefore did not violate clearly established law in reviewing and approving the search warrant applications. The district court's denial of qualified immunity for Cassilly must therefore be reversed.

C.

The evidence with regard to Deputy Sheriff Taylor even more clearly indicates that he is entitled to qualified immunity. The only evidence in the record concerning Taylor's motive in seeking the search warrants is his supporting affidavits for the warrants. Those affidavits clearly indicate that the searches were intended to gather evidence relating to violations of § 416D, a criminal statute. Their reliance on the state criminal obscenity statute makes the affidavits virtually indistinguishable from the warrant upheld by the Supreme Court in Heller, 413 U.S. at 485. There is no mention of the civil statute which permits material to be destroyed, nor is there any indication that Taylor intended to seize the evidence for any reason except to obtain evidence of a possible criminal violation. Furthermore, Hicks does not present any evidence suggesting that Taylor was involved in or even knew about Cassilly's decision to file a civil complaint a month after the search warrants were executed. While Hicks is entitled to reasonable inferences, he is not entitled to mere suppositions unsupported by the record. See Ennis, 53 F.3d at 62. Here, the uncontradicted evidence in the record demonstrates that Taylor obtained and executed the search warrants solely for the purpose of obtaining evidence in a criminal case. We therefore find that he did not violate clearly established law in obtaining the warrants. Accordingly, the district court erred in failing to grant summary judgment to Taylor on qualified immunity grounds.

III.

We conclude that Cassilly and Taylor did not violate clearly established law by obtaining search warrants (without a pre-seizure adversarial hearing) in order to seize allegedly obscene materials from Hicks as evidence for a criminal prosecution. We therefore reverse

10

the judgment of the district court and remand with instructions that summary judgment be granted to Cassilly and Taylor on the grounds of qualified immunity.[4]

<u>REVERSED AND REMANDED WITH INSTRUCTIONS</u>

11

_____

[4] The district court also denied summary judgment to Mary Teresa Garland, an Assistant State's Attorney in Cassilly's office. Garland did not participate in obtaining the search warrants, and there is no evidence suggesting that she had any role in Cassilly's decision to file a civil complaint after the warrants were executed. Accordingly, the district court is also instructed to enter summary judgment for Garland on qualified immunity grounds.