**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4052

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

GRAYSON RAMSBURG, JR.,

Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Catherine C. Blake, District Judge. (CR-
02-366-CCB)

Argued:  October 1, 2004            Decided:  November 12, 2004

Before WIDENER and WILKINSON, Circuit Judges, and Robert E. PAYNE,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

Reversed by unpublished per curiam opinion.

**ARGUED:** Jonathan Mark Mastrangelo, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellant.  Sarah Sargent Gannett, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Thomas M. DiBiagio, United States Attorney, Baltimore,
Maryland, for Appellant.  James Wyda, Federal Public Defender, Beth
M. Farber, Assistant Federal Public Defender, Baltimore, Maryland,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

The Federal Bureau of Investigation ("FBI") secured a warrant to search appellee's home. The agents who conducted the search found computer equipment containing images of child pornography. Appellee also confessed to the investigating officers that he had possessed and distributed such material. The government later disclosed that the affidavit supporting the warrant contained a falsehood. Appellee moved to suppress the evidence obtained during the search of his home and his related confession. The district court granted the motion; the government now appeals.

Even with the erroneous information redacted, the affidavit supports the magistrate's finding of probable cause. Appellee had been a member of two internet groups whose primary purpose was to facilitate the distribution of child pornography. He had also e-mailed an illegal image to an officer several years earlier. On this record, we conclude that the affidavit provided probable cause that evidence of a crime would be found at appellee's residence. We accordingly reverse.

I.

This prosecution is one of several resulting from a prolonged investigation by the FBI. In early 2001, Special Agent Binney began an undercover probe of suspected online providers of child pornography. As part of this inquiry, Binney joined the Candyman

3

e-group in January 2001. Candyman's website stated that "[t]his group is for People who love kids. You can post any type of messages you like too or any type of pics and vids you like too. P.S. IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET." Membership in Candyman entitled users to receive e-mails compiled by the site's administrator. The website also had a "Files" link, through which members could post and view images. During the time that Binney was a member of the Candyman e-group, most material he uploaded via the "Files" function illegally depicted prepubescent children engaged in sexual activity. The agent remained a member of Candyman until February 6, 2001, when the group was shut down.

Binney joined a similar e-group, named Shangri_la, on February 7, 2001. He maintained his membership in this organization until it too was shut down on March 6, 2001.

After Binney's reassignment, Special Agent Kornek inherited this investigation. Kornek submitted an affidavit to Magistrate Grimm on December 27, 2001, in support of her application for a search warrant. The affidavit recounted that, during his membership, Binney had received 498 e-mails from the Candyman e-group. Attached to some of these e-mails were 105 images of child pornography. Binney had also received 22 such images in e-mails from the Shangri_la group. Kornek further averred that an individual using the e-mail address "zigdude@aol.com" had joined

4

Candyman on December 24, 2000. This person had also joined Shangri_la on February 2, 2001, and had remained a member of both groups until their disbandment. The FBI determined that the e-mail address "zigdude@aol.com" was registered to Grayson Ramsburg of Frederick, Maryland. Ramsburg, who had owned the account since May 1994, had also used the screen name "OriolesGuy."

The affidavit contained two other important pieces of information. First, Kornek stated that the owner of "zigdude@aol.com" had received approximately 178 images of child pornography while a member of Candyman and Shangri_la. Second, Kornek recounted that, during another undercover investigation, an agent had received an illicit electronic image from an individual using the screen name "OriolesGuy." This transmission occurred on April 18, 1995.

Judge Grimm issued a search warrant based on the information that Kornek supplied. Agents conducted a search of Ramsburg's home on January 3, 2002. A subsequent examination of computer equipment seized during the search revealed many illegal images. Ramsburg also admitted his involvement in child pornography to the investigators.

On August 14, 2002, the government notified Ramsburg of an inaccuracy in Kornek's affidavit. The agent had told the magistrate that Ramsburg had received about 178 images of child pornography from Candyman and Shangri_la. This claim was based on

5

Binney's receipt of e-mails from the two groups during the relevant period. But there were several methods of joining Candyman and Shangri_la. The method that Binney claimed to have selected resulted in automatic inclusion on the mailing list. As a result, the agent would have received illicit images by default. Those members who joined via the webpage, by contrast, could elect to receive no e-mails at all. The majority of members had in fact signed up using this method and declined the e-mail option. Kornek's statement that Ramsburg had received 178 images of child pornography solely by virtue of his membership in Candyman and Shangri_la thus rested on an erroneous assumption.

Ramsburg protested the invalidity of the warrant and moved to exclude the evidence seized during the search of his residence and his associated confession. Judge Blake found that Binney had recklessly disregarded the truth in alleging that Ramsburg had received 178 illegal images. Following the rule of Franks v. Delaware, 438 U.S. 154 (1978), the district court excised this erroneous statement from Kornek's affidavit and reexamined the remaining information. Judge Blake found that the corrected affidavit would not have established probable cause. She suppressed the evidence seized during the search and Ramsburg's subsequent confession.

On appeal, the government concedes the reckless falsity of Kornek's claim. It also admits that, if the corrected affidavit

6

provides no probable cause, Ramsburg's statements must also be suppressed.  But the government maintains that the affidavit supported probable cause even without the erroneous information.

                              II.

     Probable cause is an issue of law and therefore receives de novo review.  See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996); United States v. Colkley, 899 F.2d 297, 301-02 (4th Cir. 1990).

     In determining probable cause, we apply the "totality-of-the-circumstances" test that the Supreme Court articulated in Illinois v. Gates, 462 U.S. 213, 238 (1983).  This standard applies with equal force when we review an affidavit which has been corrected following a Franks hearing.  See Colkley, 899 F.2d at 301-02.  We must therefore make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.

     The warrant affidavit, excised of its incorrect assertions, established that an e-mail address registered to appellee had been used to join Candyman and Shangri_la.  The address remained associated with the sites until their closures in 2001.  The affidavit also supported the inference that Candyman's primary purpose was to facilitate the exchange and distribution of child

                              7

pornography.  Kornek noted that the salient feature of Candyman's website was the "Files" function.  This link enabled members to upload images for viewing and downloading by the remainder of the group.  Kornek recounted that, during Binney's membership in Candyman, he had captured about 100 images and video clips from the website using the "Files" feature.  The majority of these files illegally depicted prepubescent minors engaged in sexual activity. Viewed in light of this fact, the website's proclamation encouraging users to post "any type of pics and vids you like" assumes a decidedly sinister meaning.  The fact that most of the website's traffic was illicit rightly colors a determination of its purpose.  Quite apart from Kornek's incorrect assertion, therefore, there were defensible recitations in the affidavit suggesting that Candyman's raison d'etre was to facilitate the exchange of child pornography.

Appellee notes that Candyman also provided unobjectionable services.[1]  The "Chat" function, for instance, permitted members to

---

[1]Appellee also describes these services as "legal activities" protected under the First Amendment in his argument to invalidate the original search.  His implication is that probable cause determinations should be more scrupulously examined when the alleged misbehavior on which they rest implicates free speech.  But the Supreme Court has rejected this notion.  See New York v. P.J. Video, Inc., 475 U.S. 868, 875 (1986)("[A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally.")

engage in online conversations with each other.  Standing alone, therefore, membership in Candyman could not support probable cause. Although a user could engage in illicit activities, he might also visit the site for entirely innocuous purposes.  The corrected affidavit contains an allegation of affiliation, and  "proof of mere membership . . . without a link to actual criminal activity" is insufficient to support probable cause.  United States v. Brown, 951 F.2d 999, 1003 (9th Cir. 1991).

Contrary to appellee's suggestion, however, we need not reach the question of whether mere membership in a predominantly illicit organization can support probable cause,[2] for the corrected affidavit submitted by Kornek contained more than an allegation of affiliation.[3]  The agent also informed the magistrate that another e-mail address registered to Ramsburg had transmitted an image of child pornography to an agent several years earlier.  This information not only strengthened the case for probable cause in its own right, it also bolstered the inference that Ramsburg had participated in Candyman and Shangri_la to download child

---

[2]In cases based on the same investigation, however, two circuits have found probable cause in affidavits that, after redaction under Franks, contained only allegations of membership in Candyman and Shangri_la.  See United States v. Froman, 355 F.3d 882, 891 (5th Cir. 2004); United States v. Hutto, 84 Fed. Appx. 6, 8 (10th Cir. 2003).  These holdings undermine appellee's claim that affiliation with the e-groups alone cannot support probable cause.

[3]On this ground we distinguish the opposing decisions in United States v. Perez, 247 F. Supp. 2d 459 (S.D.N.Y. 2003) and United States v. Strauser, 247 F. Supp. 2d 1135 (E.D. Mo. 2003).

pornography and not for more innocuous purposes.  Indeed, such a cross-weighting of the elements underpinning a probable cause determination is precisely what the "totality-of-the-circumstances" test invites.  See United States v. Rabe, 848 F.2d 994, 995-97 (9th Cir. 1988)(considering two-year-old evidence in light of recent suspicious activity in finding probable cause to search for child pornography).

Appellee suggests that we should discredit the prior transmission of an illegal image as a stale basis for probable cause.  Since this event occurred in 1995, it could not support the inference that evidence of a crime would be found in Ramsburg's home in 2001, when Kornek sought the warrant.  We have held, however, that "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit."  United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984)(quoting United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972)).  We have also joined several other courts in emphasizing that findings of staleness become less appropriate when the instrumentalities of the alleged illegality tend to be retained.  See United States v. Farmer, 370 F.3d 435, 439-40 (4th Cir. 2004).  Here the undisturbed portions of the affidavit established that Ramsburg, the registrant of "OriolesGuy," had possessed and distributed an image of child pornography.  And, as

10

Kornek averred to Magistrate Grimm, most collectors of child pornography "rarely . . . dispose of their sexually explicit materials." See also United States v. Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997)(noting that possessors of child pornography are unlikely to promptly dispose of it).

It is no defense that the affidavit contained only one allegation of a prior transmission of only one illicit image. Given the evident difficulty of obtaining child pornography, it is very unlikely that an individual would acquire a single image mistakenly or on a whim. And it is even more improbable that an unknowing or casual possessor would e-mail his lone image to another internet user. The earlier distribution from an e-mail account traced to Ramsburg thus strongly suggests that he was a collector of child pornography.

Staleness is shorthand for the notion that some evidence of wrongdoing is so old that it cannot support probable cause on its own. The concept does not automatically ban from warrant affidavits information of a certain vintage, as appellee would have it. Indeed, some information that may be stale standing alone becomes an appropriate basis for a probable cause determination when viewed in light of relatedly suspicious behavior. The prior transmission of an illicit image was a proper consideration in the totality of the circumstances inquiry mandated by Gates. This information, together with appellee's membership in Candyman and

11

Shangri_la, was sufficient to establish a fair probability that Ramsburg's domicile contained evidence of a crime.  The judgment of the district court is therefore

REVERSED.