UNITED STATES OF AMERICA

v.

**Danny HARRISON, a/k/a Danny White**

**No. CRIM. 04–768.**

United States District Court,
E.D. Pennsylvania.

Nov. 14, 2005.

Frederick J. Stollsteimer, U.S. Attorney's Office, Arlene D. Fisk, Philadelphia, PA, for the United States of America.

Ari S. Moldovsky, Moldovsky & Moldovsky, Dennis J. Cogan, Cogan Petrone & Associates, Philadelphia, PA, for Danny Harrison.

## *MEMORANDUM*

PADOVA, District Judge.

Defendant Danny Harrison is currently charged with five counts of possession of controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 860(a), and 844(a). Presently before the Court is Defendant's Motion to suppress physical evidence and for an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The Court held a hearing on the Motion on September 6, 2005, and the matter has been fully

briefed by both parties. For the reasons that follow, the Motion is denied.

## I. BACKGROUND

Indictment No. 04–768 charges Defendant Danny Harrison, also known as "Danny White," with two counts of possession of cocaine base ("crack") with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 860(a) (Counts Three and Four); two counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 860(a) (Counts Five and Six); and one count of possession of marijuana in violation of 21 U.S.C. § 844(a) (Count Seven).[1] The charges arose from a Philadelphia Police narcotics unit investigation of Defendant.

In August 2004, the Philadelphia Police obtained a warrant for Defendant's arrest, after allegedly observing him sell crack cocaine to a confidential informant ("CI") on two occasions in April of that year. Shortly after Defendant was arrested, the police obtained a warrant to search his residence. The search uncovered controlled substances, drug paraphernalia, and large amounts of cash. Defendant challenges the accuracy of the affidavits of probable cause supporting both the arrest and search warrants in this case.

### A. *The Arrest Warrant Affidavit*

Officer Richard Gramlich ("Officer Gramlich"), the head of a team of officers from the Philadelphia Narcotics Field Unit (the "Investigating Officers"), signed the affidavit of probable cause for the warrant for Defendant's arrest ("Arrest Warrant Affidavit"). (Def.'s Ex. 10.) The Arrest Warrant Affidavit states as follows. Officer Gramlich was contacted by the CI on April 19, 2004. The CI told him that he

could set up a buy for cocaine powder from a person called Danny "Nino" White. The CI said that "Nino" would meet him at a bar and would probably go to his mother's house at 2818 North Marston Street to pick up the drugs, but that he lived at 5332 North Sydenham Street. The CI also stated that "Nino" kept his stash at his mother's house and drove a black GMC Denali with chrome wheels. The Investigating Officers confirmed that Danny White is the registered owner of the house at 5332 North Sydenham Street and that Faye White (Defendant's mother) is one of the registered owners of the house at 2818 North Marston Street.

Between the hours of 5:00 p.m. and 12:00 a.m. on April 19, 2004, Investigating Officers Henry and Cain observed a black male identified as Danny White wearing a pink polo shirt and dark jeans and driving a black Denali in the vicinity of 2818 North Marston Street. The vehicle was registered to Danny White of 4447 North Uber Street. The Officers reported that Defendant operated the vehicle in the area but always returned to 2818 North Marston Street.

Investigating Officer Russell, who was in control of the CI, watched while the CI made a telephone call to 267–968–9822 and had a drug-related conversation with a man who answered to the name of "Nino" and who agreed to meet the CI at a predetermined location. Officer Russell gave the CI pre-recorded cash and observed him meet with Defendant, who was still wearing a pink polo shirt and dark jeans, on the front porch of 2818 North Marston Street between the hours of 8:00 p.m. and 12:00 a.m. The CI handed the cash to Defendant and followed him into the resi-

---

1. Counts One and Two of the Indictment, which charged Defendant with two counts of distribution of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), were dismissed on April 28, 2005. (*See* Doc. No. 38.)

dence. The CI exited the house thirty seconds later and was followed out of the area by Investigating Officers Henry and Cain. The CI met with Officer Gramlich and gave him two clear plastic bags of crack cocaine.

On April 20, 2004, the CI made another purchase from Defendant while under the control of Investigating Officer Russell. Officer Russell searched the CI for weapons, currency, and contraband, and gave him prerecorded money. He watched the CI dial the same telephone number and have a drug-related conversation with "Nino," whereby the two agreed to meet at a predetermined location. Between the hours of 8:00 p.m. and 12:00 a.m., Investigating Officer Wims observed Defendant's black Denali pull up at the predetermined location and watched Defendant exit the vehicle. The CI approached the vehicle and Defendant accepted the prerecorded money, retrieved some small items from his pants pocket, and handed the items to the CI. Investigating Officers Wims, Keys, Brereton and London followed Defendant, while Officer Russell followed the CI out of the area. The CI met with Officer Russell and turned over two clear plastic bags, each containing eight grams of cocaine powder.

Based on these facts in the Arrest Warrant Affidavit, Bail Commissioner Hill approved the warrant for Defendant's arrest on August 1, 2004. (Mot. Suppress at 9.) Plainclothes officers from the burglary team (the "Arresting Officers"), in possession of a photograph of Defendant, executed the warrant on August 21, 2004 at 5332 North Sydenham Street. (Def.'s Ex. 9, at 2.) During the arrest, the Arresting Officers noticed a clear plastic bag containing a white powdery substance in plain view in the residence. (Id. at 3.) They also recovered a bag of a white powdery substance from one of Defendant's guests, which

tested positive for cocaine. (Id.) Officer Gramlich prepared an affidavit of probable cause ("Search Warrant Affidavit") noting this information and consequently obtained a warrant for the search of 5332 North Sydenham Street.

### B. The Search Warrant Affidavit

The Search Warrant Affidavit (Def.'s Ex. 9) contains the following facts. The Arresting Officers reported to Officer Gramlich that they were in the vicinity of the residence at 5332 North Sydenham Street at approximately 8:45 p.m. and saw Defendant's black Denali parked behind the house. Through the open back door, they observed Defendant playing billiards just inside. They entered the house and arrested Defendant, finding a large amount of cash on his person ($1,359.00). They arrested another man present at the scene, later identified as Anthony Johnson, who was in possession of one gram of a substance alleged to be cocaine. They also noted that there was a clear plastic bag of white powder in plain view on top of a counter in the basement and a sentry safe on a shelf near the basement ceiling. The house was secured for a search.

Officer Gramlich met the Arresting Officers at headquarters at 11 p.m., spoke with them about the arrest, and conducted a field test on the substance found on Johnson's person. The substance tested positive for cocaine. Based on these facts and Officer Gramlich's account of the two alleged sales to the CI in April 2004 as averred in the Search Warrant Affidavit, a warrant for the search of 5332 North Sydenham Street issued on August 22, 2004.

Police recovered several items during the search, including large amounts of cash, powder cocaine, crack cocaine, marijuana, drug paraphernalia, and photo identification of Defendant under the name Danny White. (Gov't's Resp. Mot. Sup-

press at 3–4.) The bag of white powder seen on the basement counter tested negative for controlled substances. (*Id.* at 3.) This evidence forms the basis for the five counts of possession of controlled substances with which Defendant is currently charged. It is this evidence that Defendant moves to suppress.

## II. LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation." U.S. Const. amend. IV. Defendant does not dispute that both the arrest and the search warrants in this case were based on affidavits demonstrating probable cause on their face. Instead, he argues that probable cause was lacking because either Officer Gramlich or the police officers reporting to him lied or intentionally misled the bail commissioner with respect to each warrant. Defendant requests a hearing on the truthfulness of the warrant affidavits and that the fruits of the arrest and the search be excluded from trial.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to examine the truthfulness of a search warrant affidavit if a defendant makes a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) the allegedly false statement was necessary to the finding of probable cause in order to obtain an evidentiary hearing on the issue of the affiant's veracity. *See id.* at 155–56, 171, 98 S.Ct. 2674; *see also United States v. Carter,* 756 F.2d 310, 313

(3d Cir.1985) (applying the reasoning of *Franks* to arrest warrants); *United States v. Calisto,* 838 F.2d 711, 715–16 (3d Cir. 1988) (adapting the reasoning of *Franks* to material omissions from a warrant affidavit).

■ A substantial preliminary showing is required in order "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Franks,* 438 U.S. at 170, 98 S.Ct. 2674. A defendant must allege perjury or reckless disregard for the truth and provide accompanying offers of proof; i.e., he should provide a statement of supporting reasons as well as affidavits or otherwise reliable statements of witnesses. *Id.* at 171, 98 S.Ct. 2674. The defendant should point to the specific portions of the affidavit claimed to be false. *Id.* "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*

■ Where a defendant makes this preliminary showing, a full hearing is required to decide the allegations of perjury. If, at the resulting hearing, "the defendant shows by a preponderance of the evidence that material statements are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause." *United States v. Brown,* 3 F.3d 673, 676 (3d Cir. 1993) (citing *Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674).

## III. DISCUSSION

### A. *Arrest Warrant Affidavit*

Defendant contends that he is entitled to a *Franks* hearing with respect to the Arrest Warrant Affidavit because the Investigating Officers' accounts of the two drug sales to the CI were knowingly or recklessly false, and their observations of the

sales are necessary to the finding of probable cause for his arrest.

### 1. *Intentional or reckless falsity of statements*

Defendant makes two main arguments in support of his contention that the Investigating Officers knowingly or recklessly made misstatements to obtain the arrest warrant affidavit. First, he contends that, given the circumstances surrounding the alleged drug sale on April 19, the affiant (Officer Gramlich) and the other Investigating Officers must have lied about their observations. He has submitted the following evidence in support of this proffer:

(1) Affidavits from Defendant's mother and sister, and from the mother of his three children, attesting that on April 19, 2004 from approximately 4:00 p.m. to 8:30–9:00 p.m., a birthday party for Defendant's niece was held at his mother's house (2818 North Marston Street) (Faye White Aff.; Monique White Aff.; Natavis Harrison Aff.); there were approximately fifty people in attendance, most of whom were outside on the front porch as it was a warm evening (Faye White Aff.); none of the three witnessed a drug transaction (*id.;* Monique White Aff.; Natavis Harrison Aff.); it would have been "impossible" for him to have conducted such a transaction without witnesses because he was barbequing and playing with the children on the front porch until he left (Monique White Aff.); most parents of young children left between approximately 8:30 and 9:00 p.m. (*id.*); and Defendant left between approximately 8:30 and 9:00 p.m. to take his children home and did not return to his mother's house that night. (Natavis Harrison Aff.).

(2) Photographs of the party, including one of Defendant wearing a blue shirt (not pink, as listed in the affidavit). (Def.'s Ex. 13.)

(3) The Arrest Warrant Affidavit signed by Officer Gramlich. (Def.'s Ex. 10.)

Defendant contends that this evidence proves that he did not engage in a drug sale the evening of April 19. As the Investigating Officers claim to have observed him exchange money with the CI on the porch of Defendant's mother's home that night, they must, therefore, be lying. The Government asserts that Defendant's evidence is not sufficient to make a preliminary *Franks* showing because it does not constitute proof of a lack of veracity on the part of the affiant, Officer Gramlich, and that only Gramlich's state of mind is relevant to the *Franks* inquiry.

In order to make a preliminary showing with respect to the first prong of the *Franks* test, a defendant must challenge the affiant's state of mind as well as the truth of the affidavit. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674; *United States v. Brown,* 3 F.3d 673, 676–78 (3d Cir.1993) (holding that a challenge to the truth of the affidavit was not sufficient for a *Franks* hearing where defendant offered no evidence that the affiant knowingly or recklessly gave false statements). Defendant must, therefore, make a preliminary showing not only of the falsity of the affidavit but also of the deliberate or reckless nature of the inaccuracy. *See United States v. Yusuf,* No.Crim.2005–0015, 2005 WL 1592928, at *3 (D.Vi. June 16, 2005) (explaining that defendant must make preliminary showing of both falsity and reckless disregard). The Court considers the state of mind of the affiant (Officer Gramlich) as well as that of the Investigating Officers reporting to the affiant.[2]

---

**2.** Relying on *United States v. Brown,* the Government maintains that proof of intentional

falsehood on the part of the other Investigating Officers is immaterial to the *Franks* inqui-

■ The affidavits from Defendant's family members are not inconsistent with—and could be seen to corroborate—the police account. The statements establish that Defendant was busy during the party, but do not preclude his having briefly met with the CI on the porch as the party was winding down; nor does the presence of other people on the porch preclude the possibility that an exchange of money took place there. The time frame given in the Arrest Warrant Affidavit for the exchange of money with the CI overlaps with the time frame during which Defendant was at his mother's house. Consequently, the affidavits do not impugn the veracity of the Investigating Officers because they are not inconsistent with what the police claim to have observed.

■ The Defendant also maintains that the Investigating Officers must have lied about the April 19 sale because he was wearing a blue shirt that night, contrary to the facts as reported in the Arrest Warrant Affidavit. When a defendant offers proof of actual inaccuracies that are or should be within police knowledge, he has met his preliminary burden under the first prong of the *Franks* test. *See, e.g., United States v. Stanert,* 762 F.2d 775, 780 (9th Cir.1985) (holding that defendant made preliminary showing where the proffered evidence, the investigation report, contradicted the affiant's statements); *Yusuf,* 2005 WL 1592928, at *3–5 (holding that defendants made preliminary showing of reckless falsity where the proffered evidence, tax returns that were available to the investigating agents, pointed to gross inaccuracies in the warrant affidavit). In this case, the Arrest Warrant Affidavit states that the police observed a man in a pink polo shirt operating Defendant's Denali and later receiving money from the CI; it identifies this man as Danny White. (Def's Ex. 10, at 1.) Defendant has offered a photograph from April 19 in which he is wearing a blue, not a pink, shirt on the night in question—directly contradicting the Investigating Officers' observations. The Defendant has thus offered proof of an obvious inaccuracy in the affidavit, thereby casting doubt on the Officers' veracity.

■ Next, Defendant argues that errors and oversights in the paperwork associated

ry. (09/06/2005 Tr. at 6, 11–13.) In *Brown,* the affidavit of probable cause for the search warrant comprised the report of a nongovernmental informant. *Brown,* 3 F.3d at 676–77. The *Brown* court drew a distinction between proof that the governmental informant lied and proof that the affiant police officer lied:

> It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing. The Supreme Court made clear throughout *Franks* that a substantial preliminary showing of intentional or reckless falsity *on the part of the affiant* must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity.

*Id.* at 677. The opinion does not, however, draw a distinction between the state of mind of the affiant and the state of mind of other police officers. In fact, the *Franks* court noted that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant ignorant of its falsity." 438 U.S. at 163–64 n. 6, 98 S.Ct. 2674; *see also Calisto,* 838 F.2d at 714 (holding that, although affiant-officer filed affidavit in good faith, the conduct of police officers who relayed the facts to the affiant was relevant to the *Franks* showing); *United States v. Kennedy,* 131 F.3d 1371, 1376 (10th Cir.1997) (affirming district court's decision to consider the deliberateness of statements made to the affiant by other governmental employees in deciding the *Franks* issue).

The Arrest Warrant Affidavit in the instant case is not based solely upon information provided by the confidential informant. Rather, the Investigating Officers themselves observed the drug sales described in the affidavit and relayed the facts to Officer Gramlich. Consequently, the Court will consider the observation of all of the Investigating Officers in its analysis.

with the investigation of the two alleged drug sales constitute a sufficient showing that the Arrest Warrant Affidavit is intentionally or recklessly false. He has submitted the following evidence and explanation in support of this proffer:

(1) The property receipts for the drugs that the CI allegedly bought from Defendant on April 19 and 20 (Def.'s Exs. 11a, 11b), which are not in compliance with Philadelphia Police Directive 91. (Def.'s Ex. 11.) Defendant points out that the receiving officer (Officer Gramlich) did not fill out either form completely, nor did he specify where and how the drugs were obtained. The receipts state that the drugs were taken from within the applicable police district and that they were purchased by the CI and turned over to police. Neither receipt gives the name and address of the person from whom the property was taken.

(2) The police investigation report, which bears a report date of June 14, 2004, yet contains information about events that took place as late as August. (Def.'s Ex. 8.)

(3) The absence of an incident report for either the April 19 or the April 20 sale. Such incident reports are required by Police Directive 54. (Def.'s Ex. 4.)

According to Defendant, these irregularities and the lack of reliable records warrant an inference that the Investigating Officers intentionally or recklessly misstated the facts in the Arrest Warrant Affidavit. With respect to the wrongly-dated police report, the Government counters that it is commonplace for police to generate a report on a certain date and to enter after-acquired information on the same report. (09/06/2005 Tr. at 46.)

■ Defendant's proffer consists of generalized allegations of wrongdoing that are insufficient to satisfy the first prong of the *Franks* test. A defendant must point to specific portions of the warrant affidavit and give accompanying offers of proof. *See Franks,* 438 U.S. at 171, 98 S.Ct. 2674. As noted above, a preliminary showing of intentional falsity requires allegations of both the falsity of the statements and the state of mind of the officers. *See Yusuf,* 2005 WL 1592928, at *3. A defendant must supply contradictory information or adequately explain its absence. *See United States v. Improto,* 542 F.Supp. 904, 913 (E.D.Pa.1982). " 'To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." ' *Id.* (quoting *Franks,* 438 U.S. at 171, 98 S.Ct. 2674). Defendant has failed to offer any statements that contradict the events as recounted in the Arrest Warrant Affidavit to support these generalized allegations of misconduct. His arguments are not directed toward specific portions of the affidavit alleged to be false, but merely constitute a conclusory attack on the affidavit as a whole.

Defendant has, therefore, satisfied the first prong of the *Franks* test as to the April 19 sale to the CI. The photograph of Defendant wearing a blue shirt contradicts the Investigating Officers' own account of Defendant's actions that afternoon and evening and raises an inference of reckless or intentional falsity. Defendant has offered no proof that the remainder of the Arrest Warrant Affidavit contains misstatements.

### 2. *Probable Cause*

■ Defendant contends that the challenged portions of the affidavit are necessary to the finding of probable cause, thereby satisfying his burden under the second prong of the *Franks* test. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674. Probable cause to arrest exists when the

facts known to the arresting officer are sufficient to justify a reasonable belief that an offense has been or is being committed. *United States v. Cruz,* 910 F.2d 1072, 1076 (3d Cir.1990) (citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).

■■■ Defendant has submitted evidence contradicting the portion of the Arrest Warrant Affidavit pertaining to the Investigating Officers' alleged observations of him on the afternoon and evening of April 19. Excising that portion of the affidavit does not destroy probable cause. The Arrest Warrant Affidavit still contains information from the CI with respect to the Defendant's identity, his vehicle, his address, and his mother's address—none of which Defendant has contested. It contains some police corroboration of these facts. Finally, it contains all of the Investigating Officers' observations pertaining to the controlled buy on April 20. Because the arrest warrant affidavit includes information that Defendant gave drugs to the CI in exchange for money, as well as information establishing his identity, it contains sufficient facts to justify a reasonable belief that Defendant had committed the offense of distribution of controlled substances. The challenged portion of the affidavit is not necessary to the finding of probable cause. The Court finds accordingly that Defendant has not met his substantial preliminary burden of proof and, therefore, is not entitled to a *Franks* hearing with respect to the truthfulness of the Arrest Warrant Affidavit.

### B. *Search Warrant Affidavit*

Defendant argues that, even if the arrest warrant is valid, he is entitled to a *Franks* hearing on the basis of his allegations of intentional or reckless misrepresentations in the Search Warrant Affidavit. According to Defendant, there was no probable cause for the search of his residence at 5332 North Sydenham Street because Officer Gramlich omitted material facts from the Search Warrant Affidavit with an intent to mislead. Defendant states that the failure to include the following facts in the affidavit demonstrates an intentional or reckless disregard for the truth:

(1) The Arresting Officers saw the bag of white powder on the counter at Harrison's house near a billiards table, where one might expect to find white powder. (Mot. Suppress at 14–15.)

(2) The Arresting Officers did not field test the bag of white powder found on the counter, while they did test the bag of white powder taken from Anthony Johnson. (*Id.*)[3]

Defendant argues that inclusion of this information in the search warrant affidavit defeats probable cause for the search of his residence and he is therefore entitled to a hearing on the veracity of the search warrant affidavit.

■■■ In an omissions case, the defendant's preliminary burden to obtain a hearing pursuant to *Franks* is the same as in a case involving affirmative misrepre-

---

**3.** During the Hearing on this Motion, Defendant's counsel also argued that these omissions are in fact circumstantial evidence that the Arresting Officers did field test the bag found on the counter, discovered that the bag did not contain drugs, and intentionally left this information out of the Search Warrant Affidavit. (09/06/05 Tr. at 16–21.) Defendant's argument is not based on evidence sufficient to support an inference of intentional or reckless falsity. *See United States v. Castillo,* 287 F.3d 21, 25–26 (1st Cir.2002) (holding that speculation as to whether and when the police had actually field tested a bag reported to contain heroin "falls far short of the 'substantial preliminary showing' of intentional or reckless omission required by the *Franks* test").

sentations. *See, e.g., Calisto,* 838 F.2d at 714–15. In determining whether the omission was critical to the finding of probable cause, however, a court must decide if probable cause would have existed had the omitted information been disclosed. *United States v. Frost,* 999 F.2d 737, 743 (3d Cir.1993); *Calisto,* 838 F.2d at 715.

 Probable cause for a search warrant exists when the totality of the affidavit demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also United States v. Jones,* 994 F.2d 1051, 1056 (3d Cir.1993) (holding that direct evidence linking a crime to the particular place to be searched is not required to support a finding of probable cause). In the case of a drug dealer, there is often a probability that he will keep evidence of drug crimes at his residence. *See United States v. Burton,* 288 F.3d 91, 103–04 (3d Cir.2002).

 Even if the Search Warrant Affidavit in this case had stated that the bag of white powder seen in Defendant's residence was located near a billiards table and had not been field-tested for the presence of cocaine, there would be sufficient information to support probable cause for the issuance of a warrant to search the house. The Search Warrant Affidavit contains the following additional facts: the Investigating Officers observed Defendant give drugs to the CI in exchange for money on April 20, 2004; the Arresting Officers recovered a large amount of cash from Defendant's person at the time of his arrest; one of the men arrested with the Defendant inside the Defendant's home had a bag of cocaine in his pocket; and Defendant owns the house at which he was arrested. This information suggests that Defendant deals in controlled substances and that he may have engaged in a sale that day. There is a fair probability that

he would keep evidence of drug crimes at his residence. Therefore, even if the bag of white powder on the counter is perceived as immaterial due to its location near a billiards table, the Search Warrant Affidavit demonstrates probable cause for the search. Accordingly, Defendant has not meet his burden under the second prong of the *Franks* test and is not entitled to a *Franks* evidentiary hearing with respect to the search warrant.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to suppress evidence and for a *Franks* hearing is denied. An appropriate order follows.

### *ORDER*

**AND NOW,** this 14th day of November, 2005, upon consideration of Danny Harrison's Motion to Suppress (Doc. No. 39), the Government's response thereto, and the Hearing held in open court on September 6, 2005, **IT IS HEREBY ORDERED** that said Motion is **DENIED.**