**UNITED STATES of America,**

v.

**Robert G. DIETZ, Defendant.**

**Criminal Action No. 06–217.**

United States District Court,
E.D. Pennsylvania.

Sept. 22, 2006.

Joseph A. Ratasiewicz, Front Street Lawyers, P.C., Media, PA, for Defendant.

Roberta Benjamin, U.S. Attorney's Office, Phila, PA, for United States of America.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

### I. Introduction

Robert G. Dietz is charged in a four-count indictment with:

— one count of knowingly possessing images, and computer hard drives containing visual depictions, of minors engaging in sexually explicit conduct, where (a) the production of those images and visual depictions involved the use of minors engaging in sexually explicit conduct and (b) the images and computer hard drives have been transported or shipped in interstate or foreign commerce;[1] and

— three counts of knowingly transporting or shipping in interstate commerce, by computer, visual depictions showing minors engaged in sexually explicit conduct, where the production of those visual depictions involved the use of minors engaged in sexually explicit conduct.[2,3,4]

Now before the court are the Defendant's Motion to Suppress Statements and Evidence and Supplemental Motion to Suppress Statements and Evidence, and the government's response thereto. Specifically, Defendant moves to suppress any evidence (and fruits thereof) seized, pursuant to warrants, from his home on July 2, 2004, and from his America On-Line ("AOL") email accounts on August 3, 2004;[5] Defendant also moves to suppress any statements (and fruits thereof) that he made to federal agents on three dates: (1) July 2, 2004, (2) February 22, 2005, and (3) May 5, 2006.

Upon consideration of the parties' submissions and for the reasons set forth below, the court denies in part Defendant's Motion to Suppress Statements and Evidence, and defers consideration of Defendant's Supplemental Motion to Suppress Statements and Evidence, and the remainder of his Motion to Suppress Statements and Evidence, until the hearing scheduled for November 13, 2006. More specifically, the court denies Defendant's motion to suppress the evidence (and fruits thereof) seized, pursuant to warrants, from his home on July 2, 2004, and from his AOL email accounts on August 3, 2004; the court defers, until the hearing scheduled for November 13, 2006, consideration of Defendant's motions to suppress any statements (and fruits thereof) he made to federal agents.

1. *See* 18 U.S.C. § 2252(a)(4)(B) (2006).

2. *See id.* § 2252(a)(1)

3. Count Four of the indictment also charges the Defendant with attempting to violate § 2252(a)(1).

4. The indictment also includes a Notice of Forfeiture.

5. These two warrants were applied for and issued on June 30, 2004 and August 2, 2004, respectively.

## II. Findings of Fact[6]

### A. Contents of the June 30, 2004 Warrant Affidavit

The affidavit supporting the government's June 30, 2004 application for a warrant to search Defendant's home—the second-floor two-bedroom apartment at 221 Richards Way, Exton, PA 19341—for child pornography was given by Special Agent ("SA") Jennifer Coughlin of the Federal Bureau of Investigation ("FBI"). SA Coughlin has been an FBI special agent since September 2002, and has been assigned to investigate federal crimes involving the sexual exploitation of children since May 2003. The court finds that SA Coughlin possesses extensive expertise in the conduct of such investigations, which expertise she has acquired through training and experience.

In her affidavit, SA Coughlin relied much on information and documents she received from SA Steve Forrest, an undercover agent assigned to the FBI's Innocent Images National Initiative, which targets individuals involved in the online sexual exploitation of children. The court finds that SA Forrest possesses significant experience investigating those suspected of sexually exploiting children online.

### 1. The February 3, 2004 AOL Encounter

The court finds that on February 3, 2004, SA Forrest, while acting in an undercover capacity, signed onto AOL to investigate individuals involved in the transmission and/or receipt of child pornography. While signed onto AOL, SA Forrest located and entered a member-created AOL chat room titled "Special Interests—Yung Traders." While in this chat room, SA Forrest observed an individual using the AOL screen name "CENTRALFIRE84" send a message to the chat room which stated "anybody tradin boiz?". Based upon his experience, SA Forrest believed that CENTRALFIRE84 wanted to trade pictures of young boys. SA Forrest then initiated an instant message ("IM") session with CENTRALFIRE84. During this conversation, CENTRALFIRE84 and SA Forrest discussed exchanging videos of boys engaging in sexual activity. CENTRALFIRE84 advised that he was looking for images of boys ages "10–14." Less than 20 minutes later, SA Forrest received an email from CENTRALFIRE84@aol.com which had four attached images. All four images depicted young males engaging in sexual activity. At least two of these images depicted what appeared to be pre-pubescent males engaging in sexually explicit conduct.

Sometime after February 3, 2004, an administrative subpoena was served on AOL requesting information about the AOL account associated with the screen name CENTRALFIRE84. AOL's response to this subpoena revealed that the associated account belonged to one Bob Dietz, 1314 Axton Avenue, Belle Vernon, PA, 15012, and that the five screen names associated with this account were: CENTRALFIRE84, BOBGDIETZ1, CHIEFFIREMEDIC, CHIEFFIREMEDIC1, and ANNOFEVERGREEN.

### 2. The March 9, 2004 AOL Encounter

The court further finds that on March 9, 2004, SA Forrest, while acting in an undercover capacity, signed onto AOL to investigate individuals involved in the transmission and/or receipt of child pornography. After signing on, SA Forrest observed that the AOL screen name CHIEFFIREMED-

---

**6.** Unless otherwise noted, the facts set forth in this section are taken from the two warrants' probable cause affidavits.

IC1 also was signed onto AOL and was in a chat room titled "Very Taboo." SA Forrest entered this chat room and sent a message to the chat room which stated "tradin' vids of yg or yb." Three minutes later, SA Forrest received an IM from CHIEFFIREMEDIC1 which stated "I have a good yg outdoor pee video will trade for a good yb action video." Thereafter, SA Forrest and CHIEFFIREMEDIC1 discussed trading images of children engaging in sexually explicit activities. Seven minutes later, SA Forrest received an email from CHIEFFIREMEDIC1@ aol.com with an attached video file titled "girlpee.mpg." (This video depicts a young female (age unknown) urinating.) Nine minutes later, SA Forrest sent an email to CHIEFFIREMEDIC1@aol.com with an attached corrupted file entitled "!closeup-boyparty1–4.avi." (CHIEFFIREMEDIC1 advised SA Forrest that he was unable to open this file.) Within the next 15 minutes, CHIEFFIREMEDIC1 sent SA Forrest received six more emails from CHIEFFIREMEDIC1@aol.com. Attached to each email was a picture file depicting a minor engaged in sexually explicit activity.

During SA Forrest's March 9, 2004 IM conversation with CHIEFFIREMEDIC1, CHIEFFIREMEDIC1 told SA Forrest that he previously had molested the minor son of his former secretary (starting when the boy was 11 years old), and that that son was now married and living in Chicago. CHIEFFIREMEDIC1 also wrote that he is a 48 year old male.

Sometime after March 9, 2004, an administrative subpoena was served on AOL requesting information about the AOL account associated with the screen name CHIEFFIREMEDIC1. AOL's response to this subpoena confirmed the information obtained pursuant to the previous administrative subpoena, revealing that the associated account belonged to one Bob Dietz, 1314 Axton Avenue, Belle Vernon, PA, 15012, and that the five screen names associated with this account were: CENTRALFIRE84, BOBGDIETZ1, CHIEFFIREMEDIC, CHIEFFIREMEDIC1, and ANNOFEVERGREEN. This administrative subpoena also sought Internet Protocol ("IP") data log information that would reveal the telephone number or cable connection used by this individual to access AOL while SA Forrest conversed with him online. AOL's response revealed the "source host" for the IP address used by CHIEFFIREMEDIC1—i.e., Comcast Cable Connections ("Comcast")—as well as the IP address associated with CHIEFFIREMEDIC1 during that time period.

An administrative subpoena was subsequently served on Comcast which sought the subscriber information associated with the IP address used by CHIEFFIREMEDIC1. Comcast's response indicated that the subscriber using that IP address at the time in question was one Bob Dietz, 221 Richards Way, Exton, PA, 19341, with the email addresses bobgdietz@comcast.net and chieffyremedic@comcast.net.

### 3. Further Government Inquiries

A subsequent search of the "Choice Point Government Services" public information database on March 31, 2004 revealed that the current resident of 221 Richards Way was one Bob Dietz (date of birth December 23, 1946).

A white GMC van with the Kansas license plate number "PHE914" was subsequently observed parked at 221 Richards Way. A records check on that license plate number revealed that it belonged to one Faith E. Gates of "Professional Coach & Equipment, Ltd." A subsequent search on the LexisNexis Government Services database revealed that Professional Coach & Equipment, Ltd. is owned by Bob Dietz

and Faith Gates, who reside at 2250 N. Rock Road, Wichita, KS, 67226. A review of the Kansas Department of Motor Vehicles' records turned up information on one Robert G. Dietz, date of birth December 23, 1946, who held an expired and suspended Kansas driver's license.

A subsequent criminal history check of Robert G. Dietz[7] showed numerous arrests and a 1997 conviction for sexual exploitation of a child under the age of 16.

### 4. Child Pornography Collector Characteristics

SA Coughlin's affidavit contains a statement from FBI Special Supervisory Agent ("SSA") James Clemente, who has been a special agent since 1987 and who has worked in the FBI's Behavioral Analysis Unit (consulting on child exploitation cases) since 1998. In view of SSA Clemente's training and experience (recited at length in the affidavit), the court finds that SSA Clemente possesses extensive expertise in identifying the traits found in individuals who collect child pornography.

One trait of child pornography collectors (articulated by SSA Clemente) is particularly relevant to this case:

> The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. Many times, even when they know of law enforcement interest in them, they do not destroy it, if at all possible, they make further attempts to hide it

better. They almost always maintain their collections in the privacy and security of their homes or other secure locations where they can easily access them. June 30, 2004 Affidavit of Probable Cause, ¶ 51. The court credits SSA Clemente's statement.

### 5. Computers and Child Pornography

SA Coughlin's affidavit contains a section titled "Background on Computers and Child Pornography." Two paragraphs from that section—paragraphs 13 and 14—are particularly relevant to this case. In paragraph 13, the affidavit states that "[e]vidence of ... online storage of child pornography is often found on the user's computer"; in paragraph 14, the affidavit states that: "[a] forensic examiner often can recover evidence ... of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data." The court finds these two statements credible.

### B. Contents of the August 2, 2004 Warrant Affidavit

The affidavit supporting the government's August 2, 2004 application for a warrant to search Defendant's AOL email accounts for child pornography also was given by SA Coughlin.[8] This affidavit incorporated the affidavit supporting the June 30, 2004 warrant. The court has adopted most of the facts alleged in the June 30 affidavit in its findings of fact above and does the same here. However, one fact from the June 30 warrant affidavit merits mention here—i.e., that the emails (with child pornographic attachments) sent

---

7. To perform this criminal history check, the FBI entered Dietz's birthday as December 23, 1946, and used the social security number it obtained from his file at the Kansas Department of Motor Vehicles.

8. Although this affidavit also requests permission to search "a Seagate Brand Travan 20,

TR–5 Data Cartridge, Serial No. 4471223C17," which allegedly contains data from Defendant's network server in his Kansas office, the warrant supported by this affidavit does not mention this item, nor does the return on the warrant indicate that it was searched or seized.

by Defendant to SA Forrest on February 3, 2004 and March 9, 2004 were sent from the AOL email addresses CENTRALFIRE84@aol.com and CHIEFFIREMEDIC1@aol.com, respectively.

In addition, the court finds that, pursuant to the June 30 warrant (which was executed on July 2, 2004), the government seized three computers and their hard drives. A pre-scan of one of these computers uncovered several images that appeared to be child pornography, and a preliminary review (perhaps of the same computer) revealed 4,600 AOL email exchanges involving Defendant's AOL email addresses.

### III. Conclusions of Law

**A. Defendant Is Not Entitled to a Hearing on His Motion to Suppress the Evidence (and Fruits Thereof) Seized Pursuant to the Two Search Warrants.**

The court may (and will) rule, without a hearing, on Defendant's motion to suppress the evidence (and fruits thereof) seized, pursuant to warrants, from his home on July 2, 2004, and from his AOL email accounts on August 3, 2004 for two reasons. First, Defendant has not met his burden of establishing that a hearing is necessary, as Defendant has not stated a colorable claim for relief. *See United States v. Brink,* 39 F.3d 419, 424 (3d Cir. 1994). Second, the Supreme Court's decision in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) does not require a hearing on Defendant's motion.

**1. A Hearing Is Unnecessary, Because Defendant Has Not Stated a Colorable Claim for Relief.**

■ The Third Circuit has summarized the law governing the necessity *vel non* of an evidentiary hearing on a defendant's pretrial motion in a criminal case as follows:

Rule 12(b)(1) of the Federal Rules of Criminal Procedure requires that all "defects in the institution of the prosecution" be raised by pretrial motion. FED. R.CRIM.P. 12(b)(1). Although Rule 12 does not by its terms specify when such a motion entitles a defendant to a pretrial evidentiary hearing, we have held that a defendant's moving papers must demonstrate a "colorable claim" for relief. *United States v. Brink,* 39 F.3d 419, 424 (3d Cir.1994). *See United States v. Soberon,* 929 F.2d 935, 941 (3d Cir.), *cert. denied,* 502 U.S. 818, 112 S.Ct. 73, 116 L.Ed.2d 47(1991). In order to be "colorable," a defendant's motion must consist of more than mere bald-faced allegations of misconduct. *United States v. Sophie,* 900 F.2d 1064, 1071 (7th Cir.), *cert. denied,* 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). There must be an issue of fact material to the resolution of the defendant's constitutional claim. *See United States v. Panitz,* 907 F.2d 1267, 1273–74 (1st Cir.1990); *Sophie,* 900 F.2d at 1071.

*United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir.1996); *accord United States v. D'Andrea,* 495 F.2d 1170, 1174 (3d Cir. 1974) ("[S]ince petitioners ha[ve] not presented any evidence demonstrating that these representations by the Government (were) false, a hearing [i]s not warranted.") (internal quotation and citation omitted). Although the court has found no Third Circuit case that applies this rule to a defendant's motion to suppress evidence (or fruits thereof) seized pursuant to a search, this court believes there is ample support for this proposition in the case law of other Circuits. *See United States v. Watson,* 404 F.3d 163, 167 (2d Cir.2005); *United States v. Glass,* 128 F.3d 1398, 1408–09 (10th Cir.1997); *United States v.*

*Calderon,* 77 F.3d 6, 9 (1st Cir.1996); *United States v. Walczak,* 783 F.2d 852, 857 (9th Cir.1986); *United States v. Richardson,* 764 F.2d 1514, 1527 (11th Cir. 1985); *see also* 22A C.J.S. *Criminal Law* § 797 (2006).

Here, Defendant's motion to suppress the evidence seized pursuant to the search warrants fails to state a sufficiently colorable claim for relief to entitle Defendant to a pretrial evidentiary hearing. Defendant's only allegations are that the search warrants in this case were "improperly issued and/or invalid on [their] face and not based upon probable cause," *see* Motion to Suppress Statements and Evidence, ¶ 6, and that they were "illegally issued in violation of the Fourth Amendment to the U.S. Constitution." *See* Memorandum of Law in Support of Motion to Suppress, at 3. These bald-faced allegations do not raise "an issue of fact material to the resolution of the defendant's constitutional claim," *Panitz,* 907 F.2d at 1273–74, so the court will exercise its discretion and not hold an evidentiary hearing before ruling on Defendant's motion to suppress the evidence (and fruits thereof) seized, pursuant to warrants, from his home on July 2, 2004, and from his AOL email accounts on August 3, 2004. *See Glass,* 128 F.3d at 1409; *Richardson,* 764 F.2d at 1527.

## 2. Defendant Is Not Entitled to a *Franks* Hearing.

 The Supreme Court's decision in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) does not require a hearing on Defendant's motion. In *Franks,* the Supreme Court upheld a warrant-authorized search despite allegations of falsehoods and inaccuracies in the affidavit of probable cause, because the defendant failed to make the "substantial preliminary showing" needed to gain an evidentiary hearing. *Franks,* 438 U.S. at 170, 98 S.Ct. 2674. The Court did state

that a hearing would be required if defendant's allegations of inaccuracies in the affidavit were "more than conclusory" and "supported by more than a mere desire to cross-examine." *Id.* at 171, 98 S.Ct. 2674. It also went on to say the allegations "must be accompanied by an offer of proof ... and should be accompanied by a statement of supporting reasons. Affidavits or sworn otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* In addition, the supported allegations must include "allegations of deliberate falsehood or of reckless disregard for the truth" in the affiant's statements. *Id.*

Defendant's allegations are insufficient to require an evidentiary hearing on his motion under *Franks.* Defendant baldly alleges that the search warrants in this case were "improperly issued and/or invalid on [their] face and not based upon probable cause," *see* Motion to Suppress Statements and Evidence, ¶ 6, and that they were "illegally issued in violation of the Fourth Amendment to the U.S. Constitution." *See* Memorandum of Law in Support of Motion to Suppress, at 3. Moreover, Defendant fails to allege that the affidavits of probable cause contain deliberate falsehoods or statements made with reckless disregard for the truth, and fails to furnish (or explain the absence of) an offer of proof and statement of reasons to support his bald allegations. Defendant's allegations are therefore conclusory, and Defendant is not entitled to an evidentiary hearing on his motion to suppress the evidence (and fruits thereof) seized, pursuant to warrants, from his home on July 2, 2004, and from his AOL email accounts on August 3, 2004. *See United States v. Harrison,* 400 F.Supp.2d 780, 788–89 (E.D.Pa. 2005) ("Defendant's proffer consists of generalized allegations of wrongdoing that are insufficient to satisfy the first prong of

the *Franks* test."); *cf. United States v. Brown,* 3 F.3d 673, 676–78 (3d Cir.1993).

**B. The Search Warrants Were Supported by Probable Cause.**

Defendant argues that both the June 30, 2004 and August 2, 2004 search warrants are invalid, because they were not founded on probable cause. *See* Motion to Suppress Statements and Evidence, ¶ 6. Defendant's argument fails as to both search warrants.

A magistrate's initial probable cause determination should be paid great deference by the reviewing court. *See Illinois v. Gates,* 462 U.S. 213, 216, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "A reviewing court must determine only that the magistrate judge had a 'substantial basis' for concluding that probable cause existed to uphold the warrant." *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir.2000) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. 2317). Nevertheless, this deferential standard does not mean that the reviewing court should simply "rubber stamp" the magistrate's conclusions. *See United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir.1993) (citation, punctuation omitted).

 In determining whether a warrant should be issued, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *New York v. P.J. Video, Inc.,* 475 U.S. 868, 876, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986) (citations, punctuation omitted); *see also Whitner,* 219 F.3d at 296. Probable cause is a "fluid concept" and the inquiry turns on "the assessment of probabilities in particular factual contexts—not readily or even usefully reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct.

2317. Having said that, however, certain considerations guide the reviewing court's inquiry:

> The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. Statements in an affidavit may not be read in isolation—the affidavit must be read as a whole. Furthermore, the issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

*Whitner,* 219 F.3d at 296 (internal citations and quotations omitted). Under these rules, the issuing magistrates had a substantial basis for concluding that both the June 30, 2004 and the August 2, 2004 search warrants were supported by probable cause.

**1. The June 30, 2004 Search Warrant**

 During the five months prior to the issuance of the June 30 warrant (to search Defendant's home for child pornography), FBI undercover SA Forrest had had two online conversations—with CENTRALFIRE84 and CHIEFFIREMEDIC1—on AOL. Both conversations began in AOL chat rooms with child pornographic themes and revolved around the prospective exchange videos and images of children engaging in sexually explicit activities, and soon after both conversations, SA Forrest received emails—one from CENTRALFIRE84@aol.com and seven from CHIEFFIREMEDIC1@aol.com—with multiple attached images of children engaging in sexually explicit activities. Thus, it was reasonable for SA Forrest to believe that CENTRALFIRE84 and CHIEFFIREMEDIC1 were child pornog-

raphy collectors who possessed child pornography on the computers they had used to access AOL during these conversations, and that FBI investigators would be able to find that child pornography on their computers.

Through administrative subpoenas served on AOL, SA Forrest learned that both the CENTRALFIRE84 and CHIEF-FIREMEDIC1 AOL accounts belonged to "Bob Dietz"; he also learned the source host and IP address used by CHIEFFI-REMEDIC1 during their conversation. This information allowed SA Forrest to administratively subpoena Comcast Cable Connections (i.e., CHIEFFIREMEDIC1's source host) and discover that the subscriber using that IP address at that time was one Bob Dietz, who resides at 221 Richards Way, Exton, PA 19341. The FBI's subsequent inquiries regarding 221 Richards Way, the ownership of the vehicle parked outside (with Kansas license plates), and Mr. Dietz himself confirmed that Mr. Dietz resided at 221 Richards Way, that the vehicle was owned by Faith Gates, who co-owned Professional Coach & Equipment, Ltd. with Mr. Dietz, that Mr. Dietz held an expired Kansas driver's license, and that Mr. Dietz was a convicted child sex offender who had registered as such in Kansas. In addition, the issuing magistrates were entitled to credit SSA Clemente's assertion that "[t]he majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials." *See United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir.1993) (relying on the same character trait in upholding a search warrant for child pornography).

These facts show that the issuing magistrate had a substantial basis for concluding that the June 30, 2004 warrant (to search Defendant's home) was supported by probable cause. *See United States v. Shields*, 458 F.3d 269, 278 (3d Cir.2006); *United States v. Abraham*, No. CR05–344, 2006 WL 1344303, at *2 (W.D.Pa. May 17, 2006) (upholding a warrant to search defendant's residence for child pornography where the supporting affidavit alleged that, four months before, defendant had posted one child pornographic video file on a peer-to-peer file sharing network); *United States v. Clive*, No. 05–0383, 2006 WL 1207954, at *1 (W.D.Pa. May 2, 2006) (upholding a warrant to search defendant's residence for child pornography after defendant sent an undercover agent a single email with an attached image depicting a female who appeared to be, and according to defendant was, a minor).

*Shields* is a particularly strong precedent. In that case, the Court of Appeals upheld a warrant-authorized search of defendant's home for child pornography where the affidavit supporting the warrant alleged that defendant had an email address suggesting an interest in child pornography to join two Yahoo! e-groups that distributed child pornographic images via email to their members' email addresses, and that defendant's email address had received email with attached child pornographic images. *Shields*, 458 F.3d at 272–73. Moreover, the Court of Appeals found it insignificant that nearly nine months had passed between the date the e-groups were shut down and the date the FBI sought a warrant to search defendant's home, citing *Harvey* for the propositions that the staleness *vel non* of facts establishing probable cause is "context dependant," and that "collectors of child pornography often store their material and rarely discard it," and *United States v. Urban*, 404 F.3d 754, 774 (3d Cir.2005) for the proposition that "information suggesting a 'continuing offense' [like possession of child pornography] is more durable than information of discrete offenses." *Shields*, 458 F.3d at 279 n. 7.

Defendant in this case did much more than use a suggestive email address, join child pornographic e-groups, or receive child pornographic email; worse than the defendants in *Clive* and *Abraham*, he sent an undercover agent not one but eight emails with child pornographic attachments on two occasions in the five months before the government sought a warrant to search his home. Coupled with SSA Clemente's credible assertion that "collectors of child pornography often store their material and rarely discard it," and the FBI's ability to trace Defendant's AOL conversations and emails to his residence, these facts show that the issuing magistrate had a substantial basis for concluding that the June 30, 2004 warrant was supported by probable cause.

**2. The August 2, 2004 Search Warrant**

The August 2, 2004 warrant to search Defendant's AOL email accounts for child pornography was supported by the same facts that supported the June 30, 2004 warrant. In addition, SA Coughlin alleged in her August 2 affidavit that "several" child pornographic images had been found on one of the computers seized during the execution of the June 30 warrant, and that a preliminary review (perhaps of the same computer) had revealed 4,600 AOL email exchanges involving Defendant's AOL email addresses.

Given these facts, especially the fact that eight emails with child pornographic attachments were sent to SA Forrest from Defendant's AOL email addresses during the six months before the FBI sought a warrant to search those email accounts, the court concludes that the issuing magistrate had a substantial basis for concluding that the August 2, 2004 warrant was supported by probable cause. *See Shields,* 458 F.3d at 278; *Abraham,* 2006 WL 1344303, at *2; *Clive,* 2006 WL 1207954, at *1; *Harvey,* 2 F.3d at 1323.

**C. The Search Warrants Were Otherwise Valid.**

Defendant also argues that both the June 30, 2004 and August 2, 2004 search warrants are invalid, because they were "improperly issued and/or invalid on [their] face," *see* Motion to Suppress Statements and Evidence, ¶ 6, and because they "were illegally issued in violation of the Fourth Amendment to the U.S. Constitution." *See* Memorandum of Law in Support of Motion to Suppress, at 3. Construing Defendant's arguments generously, the court can conceive of only two points Defendant may be trying to make. First, Defendant may be trying to say that the warrants were issued by the wrong authority; second (and more likely), he may be trying to say that the warrants somehow fail to comply with the Warrant Clause of the Fourth Amendment—i.e., "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV.

Having held that the issuing magistrates had a substantial basis for concluding that both warrants were supported by probable cause, the court finds no merit in Defendant's remaining contentions. Both warrants were issued by United States Magistrate Judges—the proper authorities, and both warrants were supported by sworn affidavits of probable cause, thus satisfying the "Oath or affirmation" requirement. Lastly, both warrants satisfy the requirement that they "particularly describ[e] the place to be searched, and the persons or things to be seized." Defendant's remaining arguments thus fail as to both search warrants.

**IV. Conclusion**

For the reasons given above, the court finds that there is no basis upon which to

suppress the evidence seized, pursuant to warrants, from Defendant's home and AOL email accounts.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of September, 2006, upon consideration of the Defendant's Motion to Suppress Statements and Evidence and Supplemental Motion to Suppress Statements and Evidence, and the government's response thereto, it is hereby **ORDERED** that Defendant's Motion to Suppress Statements and Evidence is **DENIED IN PART,** while the court's consideration of the remainder of the Motion to Suppress Statements and Evidence, and of all of the Supplemental Motion to Suppress Statements and Evidence is **DEFERRED** until the hearing scheduled for November 13, 2006.

More precisely, Defendant's motion to suppress the evidence (and fruits thereof) seized, pursuant to warrants, from his home on July 2, 2004, and from his AOL email accounts on August 3, 2004 is **DENIED,**[9] while the court's consideration of Defendant's motions to suppress any statements (and fruits thereof) he made to federal agents is **DEFERRED** until the hearing scheduled for November 13, 2006.

---

9. This was part of Defendant's Motion to Suppress Statements and Evidence.